UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| WESLEY CHUCK JACOBS, | ) | CIV. 11-5084-JLV |
| | ) | |
| Petitioner, | ) | |
| | ) | ORDER DISMISSING CASE |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**INTRODUCTION**

Petitioner Wesley Chuck Jacobs filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 ("2255 Motion"). (Docket 1). The government filed its response. (Docket 10). For the reasons stated below, the 2255 Motion is denied.

**DISCUSSION**[1]

Mr. Jacobs pled guilty in United States District Court to assault with a dangerous weapon in violation of 18 U.S.C. §§ 113(a)(3) & 1153. Id. at ¶¶ 3, 4, & 7. See also United States v. Wesley Chuck Jacobs, CR. 09-50095-JLV (Dockets 1, 48 & 60) (D.S.D. 2009) ("CR. 09-50095-JLV"). The court sentenced Jacobs to 36 months custody followed by 3 years of supervised release and a $100 special assessment. The judgment was entered on July 20, 2010. (CR. 09-50095-JLV, Docket 60).

---

[1]This portion of the order constitutes the court's findings of fact and conclusions of law pursuant to 28 U.S.C. § 2255 (b).

In his direct appeal, Mr. Jacobs argued "the government's failure to establish compliance with Articles I and V of the Treaty between the United States of America and different Tribes of Sioux Indians, U.S.–Sioux, April 29, 1868, 15 Stat. 635 (hereinafter Fort Laramie Treaty), deprived the district court of subject matter jurisdiction over his criminal case." United States v. Jacobs, 638 F.3d 567, 568 (8th Cir. 2011). The United States Court of Appeals for the Eighth Circuit disagreed and affirmed the conviction. Id. "We consistently have rejected similar challenges to federal subject matter jurisdiction based upon allegations the United States failed to comply with purported jurisdictional prerequisites in the Fort Laramie Treaty. *See, e.g.*, United States v. Drapeau, 414 F.3d 869, 878 (8th Cir. 2005) . . . ." Id.

In this 2255 Motion, Mr. Jacobs claims his "conviction in federal court is barred by 18 U.S.C. § 1152 and the Fifth Amendment of the United States Constitution . . . ." (Docket 1 at p. 2). The basis for these claims is that "[o]n March 15, 2010, [he] was convicted in Oglala Sioux Tribal Court of spouse abuse and assault in the second degree and sentenced by the Oglala Sioux Tribal Court on the same date." Id. Mr. Jacobs' tribal conviction and his federal conviction both arose from a severe beating Jacobs inflicted on his wife on September 21, 2009. Id. Mr. Jacobs argues "a violation of law already prosecuted at the state or local level cannot be again prosecuted at

2

the federal level without the approval of the Attorney General." (Docket 14 at p. 4) (citing Petite v. United States, 361 U.S. 529 (1960)). "[A]pply[ing] the [Petite] policy to non-Indians prosecuted in state courts, but refus[ing] to apply it to Indians in tribal court smacks of racial discrimination and a violation of equal protection of the law." Id. (referencing Whren v. United States, 517 U.S. 806 (1996). Because Mr. Jacobs' attorney failed to raise a jurisdictional objection to the federal prosecution, Mr. Jacobs argues he was denied the effective assistance of counsel. (Docket 1 at p. 2).

**Timeliness of the 2255 Motion**

Under 28 U.S.C. § 2255 a prisoner in federal custody is subject to a one-year statute of limitations in applying for relief under this section. 28 U.S.C. § 2255(f). Mr. Jacobs did not seek review from the United States Supreme Court following his direct appeal to the Eighth Circuit. Therefore, his conviction became final 90 days after the Eighth Circuit entered its judgment. United States v. Hernandez, 436 F.3d 851, 856 (8th Cir. 2006). The mandate issued by the Eighth Circuit affirming Mr. Jacob's conviction was filed on May 27, 2011. (CR. 09-50095-JLV, Docket 75). The 2255 Motion was filed on October 31, 2011. (Docket 1). Mr. Jacobs' 2255 Motion was timely filed in accordance with 28 U.S.C. § 2255(f).

**Prosecution under 18 U.S.C. § 1153**

The Major Crimes Act, 18 U.S.C. § 1153, grants exclusive jurisdiction to the United States to prosecute Indians for certain crimes occurring in

3

Indian country.[2] That section provides:

> Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, assault with intent to commit murder, <u>assault with a dangerous weapon</u>, assault resulting in serious bodily injury (as defined in section 1365 of this title), an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

28 U.S.C. § 1153(a) (emphasis added).

"It is undisputed that Indian tribes have power to enforce their criminal laws against tribe members. Although physically within the territory of the United States and subject to ultimate federal control, they nonetheless remain a separate people, with the power of regulating their internal and social relations." <u>United States v. Wheeler</u>, 435 U.S. 313, 322 (1978), *superceded in other aspects by statute*, 25 U.S.C. §§ 1301-1303 (internal quotation marks omitted). "Their right of internal self-government includes the right to prescribe laws applicable to tribe members and to enforce those laws by criminal sanctions." <u>Id.</u> "The sovereignty that the

---

[2]Mr. Jacobs acknowledges the Major Crimes Act "allows a federal court to try crimes listed in the Act when committed by Indians in Indian County." (Docket 14 at p. 7). He claims, "[h]owever the Act does not mandate federal jurisdiction, nor does it prohibit a matter that might be tried under the Act to be assumed by Tribal jurisdiction." <u>Id.</u> Based on the subsequent analysis in this order, the court rejects petitioner's "discretionary" jurisdiction argument.

4

Indian tribes retain is of a unique and limited character. It exists only at the sufferance of Congress and is subject to complete defeasance. But until Congress acts, the tribes retain their existing sovereign powers. In sum, Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependent status." Id. at 323.

In Wheeler, the Supreme Court acknowledged the existence of the General Crimes Act, 18 U.S.C. § 1152.[3] Id. at 324. That statute gave Indian Tribes the right to have "exclusive jurisdiction . . . [over] such offenses . . . and providing that federal courts would not try an Indian who has been punished by the local law of the tribe." Id. at 325 (internal citations and quotation marks omitted). However, the Wheeler court acknowledged § 1152 was not the end of the analysis. Section 1152 "is not applicable to the present case. The Major Crimes Act, under which the instant prosecution was brought . . . does not contain any exception for Indians punished under tribal law." Id. at 325 n. 22 (internal citation omitted). Addressing the issue of double jeopardy, the Wheeler court concluded:

---

[3]Section 1152 specifically prohibits federal prosecution for "offenses committed by one Indian against the person . . . of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe . . . ." 18 U.S.C. § 1152. "[E]xclusive jurisdiction over such offenses is . . . secured to the Indian tribes respectively." Id.

5

> In sum, the power to punish offenses against tribal law committed by Tribe members, which was part of the Navajos' primeval sovereignty, has never been taken away from them, either explicitly or implicitly, and is attributable in no way to any delegation to them of federal authority. It follows that when the Navajo Tribe exercises this power, it does so as part of its retained sovereignty and not as an arm of the Federal Government. Since tribal and federal prosecutions are brought by separate sovereigns, they are not "for the same offence," and the Double Jeopardy Clause thus does not bar one when the other has occurred.

Id. at 328-30.

The ultimate impact of Mr. Jacobs' argument was anticipated by the Wheeler court:

> [F]ederal jurisdiction over crimes committed by Indians includes many major offenses. 18 U.S.C. § 1153 . . . . Thus, when both a federal prosecution for a major crime and a tribal prosecution for a lesser included offense are possible, the defendant will often face the potential of a mild tribal punishment and a federal punishment of substantial severity. Indeed, the [defendant] in the present case faced the possibility of a federal sentence of 15 years in prison, but received a tribal sentence of no more than 75 days and a small fine. In such a case, the prospect of avoiding more severe federal punishment would surely motivate a member of a tribe charged with the commission of an offense to seek to stand trial first in a tribal court. Were the tribal prosecution held to bar the federal one, important federal interests in the prosecution of major offenses on Indian reservations would be frustrated.

Id. at 330-31.

In United States v. Lara, 541 U.S. 193 (2004), an enrolled member of the Turtle Mountain Band of Chippewa Indians in North Dakota pled guilty in tribal court for "violence to a policeman." Id. at 196. As a result of the prosecution in Spirit Lake Tribal Court, Mr. Lara "served 90 days in jail."

Id.  Following the "tribal court conviction, . . . [Mr. Lara was] charged . . . in the Federal District Court for the District of North Dakota with the federal crime of assaulting a federal officer." Id. at 197.  "Key elements of this federal crime mirror elements of the tribal crime of 'violence to a policeman.'" Id.  The United States Supreme Court held "the Double Jeopardy Clause does not prohibit the Federal Government from proceeding with the present prosecution for a discrete *federal* offense." Id. at 210 (emphasis in original).

Following the Supreme Court's decision in Lara, a situation similar to that of Mr. Jacobs occurred in Federal District Court for the District of South Dakota.  On August 17, 2007, Nephi Antelope an enrolled member of the Cheyenne River Sioux Tribe assaulted another tribal member with a dangerous weapon.  United States v. Antelope, 548 F.3d 1155, 1156 (8th Cir. 2008).  Mr. Antelope pled "no contest to complicity to aggravated assault in Standing Rock Sioux Tribal Court." Id.  "Pursuant to a plea agreement, Antelope was sentenced to ninety days' imprisonment, seventy-one of which were suspended . . . ." Id.  Mr. Antelope was then "indicted in federal district court for the same incident and pleaded guilty to one count of assault with a dangerous weapon." Id.  "Antelope moved to withdraw his guilty plea." Id. at 1157.  "He argued that because he had pleaded no contest to a similar charge related to the same incident in tribal court, the Fifth Amendment's double jeopardy clause barred the federal prosecution

and thus deprived the district court of jurisdiction." Id. Both the district court and the Eighth Circuit disagreed. Id. "The Supreme Court's opinion in United States v. Lara, 541 U.S. 193 (2004) forecloses Antelope's argument." Id. "The Supreme Court held that the double jeopardy clause did not prohibit the government from prosecuting the defendant for a discrete federal offense even though he pleaded guilty to a similar tribal offense." Id. (citing Lara, 541 U.S. at 210).

The constitutional protection against double jeopardy does not insulate Mr. Jacobs from prosecution for the same conduct in both tribal court and in federal court pursuant to 18 U.S.C. § 1153. Wheeler, supra; Lara, supra; and Antelope, supra.

Mr. Jacobs' 2255 Motion as it relates to 18 U.S.C. § 1152 and a double jeopardy claim is denied.[4]

**Ineffective Assistance of Counsel**

Mr. Jacobs' 2255 Motion asserts his attorney failed to raise "the potential bar of the Tribal Court action to the identical prosecution in this

---

[4] Defendant's assertion the "draft" of the Department of Justice's Consultation Guiding Principles (Docket 14-3) permits the court "to refuse to hear any criminal case that had been prior in time instituted in Tribal Court and competently resolved there" is simply without merit. (Docket 14 at p. 5). The Tribal Law and Order Act of 2010 (Title II - Tribal Law and Order) PL 111-211, 2010 HR 725 -July 29, 2010) Section 234, Tribal Sentencing Authority, provides "Nothing in this section affects the obligation of the United States . . . to investigate and prosecute any criminal violation in Indian country." 25 U.S.C. § 1302(f).

Court . . . ." (Docket 14 at p. 8). "No competent counsel would have disregarded that fact and failed . . . to make the appropriate motion to dismiss the federal proceeding." Id. at p. 10. Mr. Jacobs argues this failure resulted in him having "minimal knowledge of the consequential effect of pleading guilty." Id. at p. 8. Mr. Jacobs asserts those "consequential effects of pleading guilty" included the following:

> Had the petitioner been fully informed of the defenses to the charges, rather than accepting the plea agreement, a number of issues and challenges could have been made to the prosecution, including but not limited to challenges to the cause of the alleged bruises to the purported victim; pre-incidence bruises to the victim; the tribal police forcing the victim to have a medical examination when there was no medical reason for such examination; the actual number of bruises; precipitating events to the incident; whether the alleged dangerous weapon met the legal definition of a dangerous weapon; the psychological state of both defendant and alleged victim at the time of the alleged incident. But for counsel's deficient performance, a reasonable probability exists that petitioner would not have pleaded guilty and insisted on a trial.

Id. at pp. 9-10. "In addition, petitioner would only be serving a single sentence rather than a dual sentence, one in this Court and the other in Tribal Court." Id. at p. 9.

"[T]o be successful on an ineffective assistance [of counsel] claim, a defendant must 'show both deficient performance by counsel and prejudice to the defense caused by that performance.' " Nupdal v. United States, 666 F.3d 1074, 1075 (8th Cir. 2012) (citing Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000) (also referencing Strickland v. Washington, 466

9

U.S. 668, 688 (1984)). Mr. Jacobs' argument raises two separate issues. First, was his attorney ineffective in failing to raise the double jeopardy claim? Second, was his attorney ineffective in failing to fully inform Mr. Jacobs of his trial options?

Regarding the double jeopardy claim, the law is well-settled that the prosecution of Mr. Jacobs in Oglala Sioux Tribal Court for the assault on his wife was not a bar to his prosecution in federal court for assault with a dangerous weapon. Wheeler, supra; Lara, supra; and Antelope, supra. As a matter of law, trial counsel was not deficient in his performance. See Hamburg v. United States, 675 F.3d 1170, 1173 (8th Cir. 2012) ("If we do not require counsel to raise arguments that anticipate changes in the law or raise unsettled issues of law, then it cannot be considered professionally unreasonable for counsel to fail to object to the correct application of settled law within our circuit."). There is no merit to Mr. Jacobs' claim his attorney was ineffective or deficient in not raising a double jeopardy claim. The 2255 Motion on this issue is denied.

Mr. Jacobs' claim he was unaware of his trial options is not supported by the plea agreement, the factual basis statement, or the transcripts of the change of plea and sentencing hearings.[5] On April 27, 2010, Mr. Jacobs

---

[5]An evidentiary hearing is not appropriate as Mr. Jacobs' "allegations cannot be accepted as true because they are contradicted by the record . . . ." Buster v. United States, 447 F.3d 1130, 1132 (8th Cir. 2006) (internal citation

10

appeared with counsel before the court pursuant to a plea agreement. (CR. 09-50095-JLV, Docket 48). Mr. Jacobs agreed to plead guilty to assault with a dangerous weapon in violation of 18 U.S.C. §§ 1153 and 113(a)(3). Id. at p. 2. Count II of the indictment charged:

> On or about the 21st day of September, 2009, near Sharps, in Indian country, in the District of South Dakota, the defendant, Wesley Chuck Jacobs, an Indian, did unlawfully assault Jennifer Lynn Jacobs with a dangerous weapon, that is, a belt, with intent to do bodily harm, all in violation of 18 U.S.C. §§ 113(a)(3) and 1153.

(CR. 09-50095-JLV, Docket 1). In exchange for Mr. Jacobs' guilty plea, count I of the indictment, assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6) and 1153, was dismissed. Id., Docket 60.

At the change of plea hearing Mr. Jacobs was placed under oath.[6] Id., Docket 69 at p. 3:16-18. Mr. Jacobs holds a graduate degree from Amherst College. Id. at p. 4:11-16. Mr. Jacobs was able to fully understand the nature of the change of plea hearing. Id. at p. 6:6-9. He testified he had

---

and quotation marks omitted). See also Rule 8 of the Rules Governing Section 2255 Cases in the United States District Courts ("the judge must review the answer, any transcripts and records of prior proceedings . . . to determine whether an evidentiary hearing is warranted.").

[6]"One important way a district court can help ensure that a plea agreement and corresponding waiver are entered into knowingly and voluntarily is to properly question a defendant about his . . . decision to enter that agreement and waive the right to appeal." United States v. Andis, 333 F.3d 886, 890-91 (8th Cir. 2003).

enough time to confer with his counsel about the allegations in the indictment. Id. at lines 17-22. He also testified he had enough time to confer with counsel before making a decision whether to enter a plea of guilty. Id. at p. 7:5-8. Mr. Jacobs fully understood the terms and conditions of the plea agreement. Id. at p. 7:16-25.

The court meticulously reviewed with Mr. Jacobs the elements of the offense of assault with a dangerous weapon as charged in count II of the indictment. Id. at pp. 15:21-16:24. Mr. Jacobs testified he understood the elements of the offense. Id. at pp. 16:25-17:3. The court engaged in a detailed discussion with Mr. Jacobs about his constitutional rights and his right to proceed to trial. Id. at pp. 17:14-19:22. Mr. Jacobs acknowledged that by entering a guilty plea he would be giving up his right to defend the case and his right to trial on the charge of assault with a dangerous weapon. Id. at pp. 19:23-20:2. Mr. Jacobs denied that anyone put any pressure on him to plead guilty. Id. at p. 20:18-20. Mr. Jacobs testified he was fully satisfied he understood the consequences of a plea of guilty. Id. at p. 23:12-14. After being fully informed of his constitutional and statutory rights, Mr. Jacobs pled guilty to count II of the indictment charging assault with a dangerous weapon. Id. at p. 23:15-20.

Mr. Jacobs testified that all of the information contained in the factual basis statement was true and accurate. Id. at p. 24:10-15; see also CR. 09-

50095-JLV, Docket 49. The section of the factual basis statement relevant to the 2255 Motion stated:

> On September 21, 2009, Wesley Chuck Jacobs confronted his wife, Jennifer Jacobs, inside their home near Sharps Corner, South Dakota. Wesley Jacobs then repeatedly struck Jennifer Jacobs about her body with a leather belt. Jennifer Jacobs was unable to resist. The beatings occurred over the course of several hours and consisted of numerous strikes upon Jennifer Jacobs' body. As a result, Jennifer Jacobs suffered widespread physical pain about her body necessitating an examination at the Indian Health Services hospital.

(CR. 09-50095-JLV, Docket 49). Mr. Jacobs admitted those facts and confirmed he was actually guilty of the crime. Id., Docket 69 at p. 24:15-19.

It was on the basis of the plea agreement, the factual basis statement and the record made at the change of plea hearing that the court accepted Mr. Jacobs' guilty plea and found him guilty of the offense of assault with a dangerous weapon. Id. at p. 25:11-21.

In advance of sentencing, Mr. Jacobs submitted an allocution statement in which he advised the court:

> I accept and acknowledge full responsibility for my actions . . . . No one twisted my arm or forced me in any way to inflict the pain and suffering my actions caused another human being.
>
> My actions on September 21st do not reflect who I am or my true character in any shape or form. . . . This egregious act on my part is inexplicable . . . .
>
> I can't undo what I did to Jennifer . . . .
>
> I understand and completely agree whatever provocation Jennifer was at fault for, it in no way justified my indespicable act. . . . I

13

should have controlled myself and I've got only myself to blame for losing control. Now I'm rightly facing the consequences for the loss of control.

Although my actions were definitely a crime of passion, [Jennifer's] confessed provocation and self-proclaimed guilt do not excuse my assault . . . .

I still cannot believe I was capable of inflicting so much pain on someone I hold so dear to my heart. . . .

(CR. 09-50095-JLV, Docket 78).

The sentencing hearing was held on July 19, 2010. Id., Docket 70. Mr. Jacobs again acknowledged[7] he was fully able to comprehend and appreciate the purpose of the sentencing hearing. Id. at p. 2:21-24. The court advised it had read Mr. Jacobs' four-page allocution statement, which although unsigned, was taken to be Mr. Jacobs' words. Id. at p. 5:4-8. The court also reviewed 31 photographs of Jennifer Jacobs taken shortly after the assault of September 21, 2009,[8] and listened to a CD containing three 911 call recordings from Jennifer Jacobs to Oglala Sioux Tribe Dispatch on September 21, 2009. Id. at p. 5:20-24.

---

[7]Mr. Jacobs was not placed under oath for purposes of the sentencing hearing.

[8]At the sentencing hearing those 31 photographs were placed in an envelope marked and received as exhibit 29. (CR. 09-50095-JLV, Docket 70:18:3-19:16). Initially returned to the government after the resolution of Mr. Jacobs' direct appeal, exhibit 29 has been restored to the criminal file and are now maintained under seal by order of the court. (CR. 09-50095-JLV, Docket 77). Although under seal, exhibit 29 is available to court users and parties to the criminal case in this habeas proceeding. Id.

During the sentencing hearing, Mr. Jacobs confirmed he had enough time to confer with his attorney about the presentence report ("PSR"). Id. at p. 13:9-13. The court reviewed the PSR guideline calculations for the offense of conviction which set the range for imprisonment at 30 to 37 months.

Defense counsel withdrew objections one through four to the PSR. Id. at pp. 10:21-22 & 11:11-13. Mr. Jacobs offered the following statement prior to the imposition of sentence:

> Thank you, Your Honor. I guess I want to thank everybody for coming up and supporting me in the sentencing. I want to apologize at the outset to all the people in the courtroom for my behavior. There's no excuse for it. I know I let them down. I let myself down, but I let my family down. . . . I accept the responsibility for what I did. . . .

Id. at pp. 96:9-12; 97:25-98:1.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. The court concluded at the change of plea hearing, and finds again for this record, that Mr. Jacobs knowingly and voluntarily entered into the plea agreement. Mr. Jacobs is a well-educated, intelligent individual. He understood the option for trial available to him. Mr. Jacobs understood the waiver of his appeal rights on non-jurisdictional issues prior to entry of his plea of guilty. See United

States v. Osei, 679 F.3d 742, 747 (8th Cir. 2012) ("Osei, who is highly educated and has earned a master's degree, testified clearly to the factual bases of his guilty plea[]. He responded coherently when the court asked him whether he had adequately conferred with his attorney[]. He listened and indicated his understanding and acceptance when the court explained to him that his guilty plea[] would be final, and that he could not later take [it] back."). "In short, there is no indication in the record of any fair and just reason to allow [defendant] to withdraw his guilty plea[] . . . ." Id.

Mr. Jacobs' claim he was unaware of and was ill-advised by defense counsel about the "consequential effects of pleading guilty" is disproven by the extensive record in his criminal case. Mr. Jacobs fails to satisfy the first prong of the ineffective assistance of counsel test. "[A] guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not 'a reasonably competent attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases.' " Strickland, 466 U.S. at 688 (internal citation omitted). Mr. Jacobs fails to "show . . . deficient performance by counsel . . . ." Nupdal, 666 F.3d at 1075. Mr. Jacobs' 2255 Motion on ineffective assistance of counsel grounds is denied.

**ORDER**

Based upon the above findings of fact and conclusions of law, it is hereby

ORDERED that petitioner's 2255 Motion (Docket 1) is dismissed on its merits with prejudice.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 2253(c) and Rule 11 of the Rules Governing Section 2255 Cases in the United States District Courts, the court declines to issue a certificate of appealability as Mr. Jacobs has not made a substantial showing of the denial of a constitutional right. Mr. Jacobs may timely seek a certificate of appealability from the United States Court of Appeals for the Eighth Circuit under Fed. R. App. P. 22. See Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts.

Dated April 16, 2013.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE